UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KURTIS FRANK SCOBLE,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZAI, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:21-cv-001443-EFB (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability benefits under Titles II and XVI of the Social Security Act. ECF No. 1.  The parties' cross-motions for summary judgment are pending. ECF Nos. 12 & 16. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1). ECF No. 8.  For the reasons provided below, plaintiff's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

I. **Background**

In May 2019, plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), and supplemental security income (SSI) under Title XVI

/////

/////

1 of the Act, alleging disability beginning March 20, 2018.[1]  Administrative Record (AR) 14, 213-
2 219, 235.  Plaintiff alleged he was disabled due to arthritis of the knees, hips, shoulders, hand
3 hands; obstructive pulmonary disease; and depression and anxiety.  AR 213-219, 236, 308.
4 Plaintiff's application was denied initially and upon reconsideration.  AR 90-91, 130-131.  After a
5 hearing before an administrative law judge (ALJ) on November 17, 2020, at which plaintiff was
6 represented by counsel (AR 34-41), the ALJ published an unfavorable decision on December 1,
7 2020.  AR 14-28.
8     At the hearing, plaintiff testified that he was self-employed from 2007 through 2016,
9 doing jobs including refurbishing recreational vehicles, remodeling houses, and roofing.  AR 39-
10 43.  While working as a roofer, he jumped from a ladder to avoid falling and hurt his left knee.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

AR 43-44. Plaintiff testified that he was unable to mow the lawn, do dishes, take out the trash, or do chores due to knee pain. AR 45-46. He further testified that he couldn't do anything "without being completely out of breath." AR 46. Upon questioning, plaintiff testified that he broke his left thumb and right hand about six months earlier and couldn't use them, and that he had physical limitations in his hands, hip, and knees. AR 48-49, 53-54. He testified that his hip "falls out of joint occasionally" and caused him excruciating pain. AR 50. He estimated that he could sit for ten or fifteen minutes and stand for eight minutes without pain. AR 51-53. He testified that he left his last job because he was unable to meet production deadlines due to physical limitations. AR 52. As to mental health, plaintiff testified that he was taking anti-depressant medication and had seen a counselor. AR 46-47.

Vocational expert (VE) Lorian Hyatt testified that a person with the same age, education, and work experience as plaintiff, limited to light work as set forth in the determined residual functional capacity (RFC), could perform jobs as an assembler, interviewer, or inspector, all classified as light work at Specific Vocational Preparation (SVP) level 2. AR 27, 58; *see* DOT 706.684-022 (assembler), DOT 205.367-054 (interviewer); DOT 559-687-074 (inspector). The ALJ determined that plaintiff had not been under a disability during the period at issue, March 2018 through March 2020, finding as follows:

1. The claimant last met the insured requirements of the Social Security Act through March 31, 2020.

2. The claimant has not engaged in substantial gainful activity since March 20, 2018, the alleged onset date.

3. The claimant has the following severe impairments: osteoarthritis of the bilateral hands; osteoarthritis of the bilateral hips; osteoarthritis of the bilateral knees; and chronic obstructive pulmonary disease ('COPD').

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except: the claimant can lift and carry 25 pounds frequently and 25 pounds occasionally; he can frequently push and pull with his non-dominant left upper extremity; he can sit for 6 hours in an 8-hour workday; he can stand and/or walk for 6 hours in an 8-hour workday; he can frequently finger and handle with his left upper extremity; and he

      can have frequent exposure to fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1966] and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8. The claimant has a limited education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of 'not disabled,' whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 20, 2018 through the date of this decision.

AR 18-27.

## II. Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### III. Claims

Plaintiff claims that the ALJ made the following errors: (1) the ALJ erred by finding plaintiff's mental impairments non-severe and failing to include mental limitations in the RFC; and (2) the ALJ erred in weighing the opinion of a treating physician, such that the physical RFC was not supported by substantial evidence.

### IV. Analysis

A. Mental Impairments

Plaintiff asserts that the ALJ erred by failing to include any mental limitations in the RFC. He argues that the ALJ's Step Two findings and RFC determination failed to account for plaintiff's bipolar disorder and depression-related symptoms, including auditory and visual hallucinations, and his associated mental and social limitations.

At Step Two, the ALJ was required to determine whether plaintiff had any "severe" impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523. The purpose of Step Two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. *Bowen v. Yuckert*, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has

5

no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001).

Since plaintiff alleged he was disabled, in part, by the mental impairments of depression and anxiety, the ALJ was required "to follow a special psychiatric review technique." *Keyser v. Comm'r*, 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a). First, under this technique, the ALJ must first determine whether plaintiff has "a medically determinable mental impairment(s)[.]" 20 C.F.R. § 404.1520a(b)(1). Here, the ALJ found that plaintiff had the following medically determinable mental impairments: bipolar disorder, type 2; alcohol use disorder; depressive disorder; cannabis use disorder; and amphetamine use disorder in remission. AR 19.

Second, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas. 20 C.F.R. § 404.1520a(b)(2), (c)(3). Here, the ALJ rated plaintiff's limitations as: "no limitation" in remembering or applying information; "mild limitation" in interacting with others; "mild limitation" in concentrating, persisting, or maintain pace; and "mild limitation" in adapting or managing oneself. AR 19-20. The ALJ supported this analysis with cites to record evidence, including a 2019 consultative psychological exam by Dr. Sylvia Torrez, who found that plaintiff's intellectual functioning appeared to be in the average range; his fund of knowledge appeared intact; he was oriented in multiple domains; his concentration for conversation was only mildly impaired; and he was dramatic but cooperative during the exam, with no unusual psychomotor activity. AR 19, citing AR 374-375. The ALJ further noted that plaintiff's providers generally observed that he was cooperative and pleasant, displaying normal or euthymic moods or only mind anxiety. AR 19-20 (record citations omitted). The ALJ also noted plaintiff's self-reported activities of driving, shopping in stores, and doing house and yard work, as evidence that his mental limitations were no more than mild. AR 19-20 (record citations omitted). Additionally, the ALJ cited a June 2020 treatment record stating that plaintiff's mood symptoms had improved with medication. AR 20, citing AR 574.

The ALJ next considered the opinion evidence of mental impairment, finding persuasive the opinions of two state agency psychological consultants, Dr. E. Campbell and Dr. P. Hawkins,

6

who reviewed plaintiff's medical records and concluded that his mental impairments were non-severe. AR 20, citing AR 69, 104. The ALJ reasoned that

> [t]hese findings are persuasive as they are supported and consistent with the record. They are well-supported by their review of the record, and Dr. Campbell's narrative explanation that although the claimant displayed some abnormalities during his psychological exam (e.g., dramatic behavior, tangential thought process, expansive mood), this was in the setting of the claimant drinking just prior to the exam.[2] This is consistent with Dr. Torrez' mental status observations, and with the claimant's report to her that he had a shot of alcohol an hour prior to the exam.[3] Their findings are also consistent with the claimant's treatment notes, which documented some intermittent depressed, sad, or anxious mood . . . but a good response to medication with improved mood symptoms. They are also consistent with the claimant's report of his activities, which include caring for his mother and uncle, cleaning and doing chores, doing laundry, mowing the lawn, driving a car, talking to his son regularly, and shopping in stores and on the computer.[4] As such, their opinions are persuasive.

AR 20 (some record citations omitted). The ALJ found Dr. Torrez's opinion partially persuasive, insofar as she concluded that plaintiff had no limitation in following simple, complex, or detailed instructions, or maintaining persistence and pace to perform such tasks. AR 20, citing AR 375.

At the third step of the special review technique, the ALJ must use the ratings to determine the severity of the mental impairment. 20 C.F.R. § 404.1520a(d)(1). If the ALJ finds that the functional limitation in even one of these areas is "extreme" (or finds four or more episodes of decompensation), then that rating "represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* Here, the ALJ concluded that plaintiff's medically determinable mental impairments, considered singly and in combination, did not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities and were therefore non-severe. AR 19, 21.

The court finds the ALJ's Step Two conclusions were supported by substantial evidence. In arguing for error, plaintiff cites Dr. Torrez' assessment that plaintiff was moderately limited in

---

[2] Citing AR 69.

[3] Citing AR 372-375.

[4] Citing AR 272-275.

two areas of mental functioning. (ECF No. 12 at 15.) However, plaintiff does not explicitly challenge the ALJ's weighing of Dr. Torrez's opinion as only partially persuasive, and the court finds no error on this basis. Plaintiff also cites treatment records from November and December 2019 that show plaintiff was assessed with bipolar disorder late in the relevant period (March 2018 to March 2020) and treated for depression and other mental symptoms. (ECF No. 12 at 13-14.) Because the ALJ's Step Two findings are supported by substantial evidence, however, the court cannot reweigh the evidence to arrive at a different result. *See Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) ("If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.") (citation omitted). Plaintiff has not shown that he had greater mental limitations than the mild variety found by the ALJ and supported by substantial evidence.

Plaintiff next argues that the ALJ failed to consider plaintiff's mental limitations at Steps Four and Five of the sequential evaluation. As the Ninth Circuit explained in *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017), "Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (Internal quotes and citations omitted.)

Here, the ALJ did not discuss plaintiff's mental impairments after finding only mild limitations at Step Two, nor did he include any mental limitations in the RFC. However, the ALJ found plaintiff nondisabled based on his ability to perform jobs as an assembler, interviewer, or inspector—all classified as light, unskilled work, SVP 2. AR 27 (citing VE testimony at AR 58). Unskilled jobs require "little to no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Mild mental impairment is generally consistent with unskilled work. *See Caldera v. Astrue*, 2010 WL 2991484 (C.D. Cal. July 27, 2010) ("Nor has Caldera shown any inconsistency between a mild mental impairment and her ability to

8

perform simple, unskilled work activities at step five of the sequential analysis."). As plaintiff was found nondisabled based on his ability to perform unskilled jobs, any error in failing to include mild mental limitations in the RFC is harmless. *See Alva v. Saul*, 2020 WL 363787, *7 (E.D. Cal. Jan. 2, 2020).

B. <u>Medical Opinion</u>

Plaintiff asserts that the ALJ erred in discounting the opinion of cardiologist Dr. Richard Clark, who diagnosed plaintiff with syncope[5] and completed an October 21, 2020 treating source statement. AR 784-787.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The Ninth Circuit previously has required that, in order to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Alternatively, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675.

However, for disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017).

/////

---

[5] "Syncope is a medical term used to describe a temporary loss of consciousness due to the sudden decline of blood flow to the brain. Syncope is commonly called fainting or 'passing out.'" *Source:* https://www.ninds.nih.gov/health-information/disorders/syncope (last visited 1/9/23).'

1  Filed in 2019, plaintiff's application is subject to the new rules for the evaluation of medical
2  evidence.
3        The revised rules provide that adjudicators for the Social Security Administration,
4  including ALJs, evaluate medical opinions according to the following factors: supportability;
5  consistency; relationship with the claimant; specialization; and other factors such as the medical
6  source's familiarity with other evidence in the record or with disability program requirements.  20
7  C.F.R. § 416.920c(c)(1)-(5).  The most important of these factors are supportability and
8  consistency.  20 C.F.R. § 416.920c(b)(2).  Supportability is the extent to which an opinion or
9  finding is supported by relevant objective medical evidence and the medical source's supporting
10 explanations.  20 C.F.R. § 416.920c(c)(1).  Consistency is the extent to which an opinion or
11 finding is consistent with evidence from other medical sources and non-medical sources,
12 including the claimants themselves.  20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1).  The ALJ will
13 articulate how she considered the most important factors of supportability and consistency, but an
14 explanation for the remaining factors is not required except when deciding among differing yet
15 equally persuasive opinions or findings on the same issue.  20 C.F.R. § 416.920c(b).  When a
16 single medical source provides multiple opinions and findings, the ALJ must articulate how they
17 were considered in a single analysis.  20 C.F.R. § 416.920c(b)(1).
18       In his October 2020 opinion, Dr. Clark stated that he had been treating plaintiff once a
19 month since August 2020.  AR 784.  He opined that plaintiff would be off task five percent of the
20 workday and absent one day per month due to his conditions.  AR 784.  He further opined that
21 plaintiff could lift less than ten pounds continuously and ten pounds frequently, and carry up to
22 ten pounds frequently.  AR 785.  Dr. Clark opined that plaintiff could sit, stand, and walk for
23 eight hours in a workday but required the option to sit/stand at will.  AR 785.  Asked to identify
24 the particular medical findings which supported his opined limitations, Dr. Clark wrote:
25 "Unexplained syncope which may cause harm if carrying a significant amount."  AR 785.  As to
26 opined climbing and balancing limitations, Dr. Clark wrote: "Syncope . . . could result in serious
27 injury if he falls from greater than standing height."  AR 787.
28 /////

The ALJ assessed Dr. Clark's opinion as follows:

> The opinion from Dr. Clark, the claimant's cardiologist[,] is not persuasive. He limited the claimant to lifting and carrying at the sedentary exertional level, and he found that he could never climb ladders and scaffolds, and never balance. He also opined that he would be off-task for 5% of the workday, have one absence a month, frequently stoop and kneel, and that he had restrictions around unprotected heights, moving mechanical parts, humidity, wetness, extreme temperature and vibration.[6] These findings are not persuasive because the only basis that he provided for his findings was the claimant's unexplained syncope. In addition, these findings are not consistent with Dr. Clark's 2020 treatment notes, which documented no recent syncopal episodes.[7] Hence, his findings are not persuasive.

AR 25.

Earlier in his decision, the ALJ discussed Dr. Clark's treatment of plaintiff in the fall of 2020, writing as follows:

> Richard Clark, MD, the claimant's cardiologist, also diagnosed the claimant with left anterior fascicular hemiblock, external dyspnea, atypical angina, and syncope in August 2020, after the claimant reported recent syncopal events to him.[8] In September 2020, the claimant underwent a carotid ultrasound that showed less than 50% ICA stenosis bilaterally, and no evidence of clinically significant subclavian or vertebral arterial disease.[9] Based on this scan, Dr. Clark also diagnosed the claimant with cerebral ischemia and carotid artery stenosis.[10] He also noted that the claimant's Lexican SPECT showed no ischemia, and he observed normal cardiovascular signs (e.g., no murmurs, normal PMI, normal heart sounds, and normal bilateral carotid upstroke) during the exam.[11] Together, this evidence, along with the claimant's prior echocardiogram and chest x-ray, which showed normal left ventricular ejection fraction and no

---

[6] Citing AR 784-787.

[7] Citing AR 721.

[8] Citing AR 735-737. In his August 24, 2020 treatment note, Dr. Clark wrote that plaintiff reported syncope seven times in the past year. AR 735. "Last episode occurred 4 to 5 months ago when he was sitting in his garage and suddenly woke up on the garage floor with a bruise on his head. He denies any prodrome or palpitations immediately prior to this. He has had 7 total episodes that are non-prodromal. He would get occasional dizziness where he feels stars." *Id.*

[9] Citing AR 727.

[10] Citing AR 722.

[11] Citing AR 721-722.

> acute cardiopulmonary process . . . , establish that *the claimant does not have a severe cardiac or ischemic impairment.*

AR 19 (emphasis added; some record citations omitted).

Plaintiff argues that the ALJ did not sufficiently discuss the factors of supportability and consistency in assessing Dr. Clark's opinion. As to supportability, the ALJ wrote that "the only basis that [Dr. Clark] provided for his findings was the claimant's unexplained syncope." Despite the brevity of this stated reason, the ALJ had previously summarized Dr. Clark's treatment notes, which showed that the diagnosis of "unexplained syncope" was based on plaintiff's self-reports of fainting spells; plaintiff's cardiac exam findings were unremarkable. Dr. Clark's opinion did not clarify why these self-reported episodes of "unexplained" syncope caused specific functional limitations on lifting, carrying, standing, walking, and balancing. As to consistency, the ALJ wrote that the opined limitations were "not consistent with Dr. Clark's 2020 treatment notes, which documented no recent syncopal episodes." AR 25, citing AR 721 (September 23, 2020 treatment note stating that plaintiff presented for "follow-up for syncope" after reporting that one occurred several months prior, but "has not had any recurrent syncopal episodes[.]"). To summarize, when Dr. Clark filled out the October 2020 treating source statement, plaintiff had not experienced syncope for approximately six months, and his cardiac exam results were largely normal. Read in conjunction with his earlier discussion of Dr. Clark's treatment notes, the ALJ's analysis of supportability and consistency was legally sufficient. *See Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (the court's "review of an ALJ's fact-finding for substantial evidence is deferential, and '[t]he threshold for such evidentiary sufficiency is not high.'"), quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *see also Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (substantial evidence "is a highly deferential standard of review").

In formulating the RFC, the ALJ partially credited the opinions of state agency medical consultants Dr. H. Pham and Dr. R. Friedman, who "found that the claimant could lift and carry 25 pounds both occasionally and frequently, sit for 6 hours, and stand and/or walk for about 6 hours in an 8-hour workday. They also found that the claimant could frequently handle and finger with the left upper extremity, and that he had no postural limitations." AR 24, citing AR 71-72,

106-108.  The ALJ found these opined limitations consistent with the longitudinal record, including x-rays, which showed moderate to severe triscaphe and thumb degenerative joint disease in the left hand, but otherwise mild findings in the right hand; plaintiff's lack of weakness, and no major treatment for his musculoskeletal issues; examination findings of symmetrical wrist range of motion, only slightly decreased hip and knee range of motion, and normal motor strength and muscle bulk and tone; and plaintiff's declination of NSAIDs and physical therapy for his hand pain, as well as short engagement in physical therapy for his hip pain.  AR 24-25; *see* AR 369, 378, 381, 413, 416, 473, 480, 595-596, 771, 778.  The ALJ was entitled to rely on these state agency expert opinions, provided they were consistent with the evidence.  *See* 20 C.F.R. § 404.1513a(b)(1).  Here, the ALJ duly considered the longitudinal record of medical evidence in evaluating the medical opinions.  *See* AR 24-25.  As plaintiff has not shown harmful error in the ALJ's weighing of the medical opinions or the resulting RFC, defendant is entitled to summary judgment.

V.    **Order**

For the foregoing reasons, plaintiff's motion for summary judgment (ECF No. 12) is DENIED, defendant's cross-motion for summary judgment (ECF No. 16) is GRANTED, and the Clerk is directed to enter judgment in defendant's favor and close the case.

DATED: February 6, 2023.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

13